ATTORNEYS FOR APPELLANT
Suzanne St. John
Marion County Public Defener Agency
Indianapolis, Indiana

Heath Y. Johnson
Johnson, Gray & Macabee
Franklin, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General

Stephen R. Creason
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Jan 21 2016, 2:41 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 49S05-1505-CR-00335

ANTONIO GARCIA,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G14-1208-FD-054147
The Honorable Jose D. Salinas, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-1402-CR-00061

**January 21, 2016**

**David, Justice.**

In August 2012, Indianapolis Metropolitan Police Officer Phillip Robinett conducted a routine traffic stop. Upon making the stop, he discovered that the driver, Antonio Garcia, was

driving without a valid driver's license. Garcia was lawfully placed under arrest. Before Officer Robinett placed Garcia in his police cruiser to be transported to the police station, he conducted a quick pat-down search of Garcia's clothing in order to check for weapons. A cylinder-shaped pill container was found in Garcia's pocket. Officer Robinett opened the container to check what it contained. The content was later confirmed to be a single narcotic pill, which Garcia did not have a valid prescription for.

Garcia was charged with driving without a license and possession of a controlled substance. At trial, Garcia sought to suppress the admission of the pill container and its contents as the fruit of an unlawful search under Article 1, Section 11 of the Indiana Constitution. It was not disputed that Officer Robinett was free to conduct a warrantless pat-down search of Garcia's person incident to his arrest. Rather, Garcia only challenged the opening of the pill container as being an unreasonable search.

We disagree with Garcia's contention that opening the pill container during the course of the pat-down search incident to his arrest constituted an unreasonable search. As such, we affirm the trial court's denial of Garcia's motion to suppress and hold that the search of Garcia incident to his arrest was reasonable under Article 1, Section 11 of the Indiana Constitution.

**Facts and Procedural History**

On August 6, 2012, Indianapolis Metropolitan Police Officer Phillip Robinett observed a vehicle driving without headlights at approximately 9:00 p.m. Officer Robinett turned his police cruiser around to initiate a traffic stop. The vehicle then turned without signaling into a parking spot, even prior to Officer Robinett activating the police cruiser lights and sirens.

Upon approaching the vehicle, Officer Robinett requested a driver's license from the vehicle driver. The driver, who was later identified as Antonio Garcia, only had an identification

card from a foreign country. Officer Robinett confirmed that Garcia did not hold a valid driver's license, and he initiated an arrest for driving without a license.

Incident to the arrest, Officer Robinett conducted a pat-down search of Garcia to check for weapons. No weapons were found during the search, but a silver cylinder-shaped container was recovered from Garcia's front left pocket. Through his work as a police officer, Officer Robinett had encountered similar containers and recognized that it likely contained either an illegal substance or properly prescribed prescriptions. Upon opening the container, Officer Robinett found a single pill. Garcia was taken into custody, and his vehicle was towed. The cylinder was delivered to the police department property room, and the contents of the container, a single pill, was later submitted to the crime lab for testing. The crime lab report indicated that the pill contained Hydrocodone. Garcia did not have a valid prescription for this medication.

Garcia was charged with possession of a controlled substance[1] and with operating a vehicle without a driver's license.[2] A bench trial was held. At trial, the defense made a motion to suppress the cylinder container and its contents from being admitted into evidence. The defense asserted that Officer Robinett did not have the authority to open the container, but conceded that the container could have been seized as a search incident to arrest. The State opposed the motion, relying upon U.S. v. Robinson, 414 U.S. 218 (1973), to argue that opening the container found on Garcia's person was a permissible warrantless search incident to arrest.

At trial, Garcia testified that he had been living with his wife, his wife's aunt, and child. Only three days prior to the traffic stop, his wife's aunt had passed away. Garcia explained that the cylinder container was only in his possession because that morning he had been cleaning out the bedroom of his wife's recently deceased Aunt, and he had found the container. He believed it

_____

[1] Indiana Code § 35-48-4-7 (2008).

[2] Indiana Code § 9-24-18-1 (2008).

3

could contain pills, but Garcia never looked inside the container. He had picked it up to keep it out of reach from his young son. Contrary to this account, Officer Robinett testified that after he found the pill inside the container Garcia voluntarily stated that the pill was his "narcotic for pain." (Tr. at 29.) There were no other testifying witnesses.

After both the State and Defense rested, defense counsel conceded to the fact that Garcia was driving without a license. Then, the trial court returned to the issue of whether the cylinder container should be suppressed, noting that the Robinson case seemed to be "on point." (Tr. at 44.) The defense argued that the contents of the container was not obviously contraband, there was no concern for officer safety, no exigent circumstances, and a warrant could have been obtained if the police wanted to examine the contents of the container.

The court denied the motion to suppress the container, finding Robinson controlling. Garcia was found guilty of possessing a controlled substance and driving while never receiving a license. Garcia was sentenced to 180 days in Marion County jail with 176 days suspended.

Garcia appealed, asserting that the search of the container was outside the scope of a permissible search incident to arrest and was unreasonable under Article 1, Section 11 of the Indiana Constitution. The Court of Appeals agreed with Garcia. Garcia v. State, 25 N.E.3d 786 (Ind. Ct. App. 2015). In reaching this decision, the court applied the Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005), factors "to the search of the container." Id. at 790. The court reasoned that the degree of suspicion that a criminal violation had occurred was low, both arguments about the degree of intrusion were meritorious, and the need of law enforcement was also low given that there was no concern for officer safety or suspicion of criminal activity. Id. Thus, it was unreasonable to open the container found in Garcia's pocket during a search incident to arrest. Id. at 791. The pill was inadmissible, and Garcia's conviction for class D felony possession of a schedule III controlled substance was reversed. Id.

This Court granted the State's petition for transfer, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(a). We affirm the trial court's denial of Garcia's motion to

4

suppress.  We hold that the search of the container found on Garcia's person was within the scope of a search incident to a lawful arrest and was reasonable under Article 1, Section 11.

**Standard of Review**

The standard of review for a trial court's ruling on a motion to suppress is similar to other sufficiency issues.  Litchfield, 824 N.E.2d at 358 (internal citation omitted).  "We determine whether substantial evidence of probative value exists to support the trial court's ruling."  Id.  Evidence will not be reweighed, and we "consider conflicting evidence most favorably to the trial court's ruling."  Id.  However, this Court reviews *de novo* a trial court's ruling on the constitutionality of a search or seizure.  Belvedere v. State, 889 N.E.2d 286, 287 (Ind. 2008) (internal citation omitted).

**Discussion**

Article 1, Section 11 of the Indiana Constitution reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and person or thing to be seized.

This Section has long served to protect Hoosiers from unreasonable searches and seizures.  Reasonableness of a search under the Indiana Constitution "turns on an evaluation of the reasonableness of the police conduct *under the totality of the circumstances*."  Litchfield, 824 N.E.2d at 361 (citing Moran v. State, 644 N.E.2d 536, 539 (Ind. 1994)) (emphasis added).  In considering the totality of the circumstances, the perspectives of both the investigating officer and subject of the search are considered.  Litchfield, 824 N.E.2d at 360. Three factors must be balanced: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs."  Id. at 361.

In considering the three <u>Litchfield</u> factors, the context in which the search occurs is highly relevant. As early as 1914, the U.S. Supreme Court recognized the validity of a search incident to a lawful arrest, noting that the government has "always recognized under English and American law" that it is permissible "to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime." <u>Weeks v. U.S.</u>, 232 U.S. 383, 392 (1914). Likewise, Indiana has also recognized that a search may be conducted "without a warrant if it is incidental to a lawful arrest." <u>Townsend v. State</u>, 460 N.E.2d 139, 141 (Ind. 1984). In the present case, it is not disputed that Garcia was searched incident to a valid arrest.

The question before the Court today goes beyond the general acceptance that a warrantless search incident to a valid arrest is reasonable under both the Fourth Amendment and Article 1, Section 11. Garcia does not dispute that the search of his person was permissible as a search incident to arrest. Rather, he challenges the permissible scope of such a search. Garcia contends that while the pill container found on his person during the pat-down search could be seized, a search incident to arrest under Article 1, Section 11 of the Indiana Constitution does not permit the officer to open the container found on his person without a warrant or reasonable suspicion of illegal activity. After consideration of the three <u>Litchfield</u> factors and federal precedent on this very issue, we disagree. In the present case, opening the container found on Garcia's person during the course of a search incident to a valid arrest was reasonable under the Indiana Constitution.

**Article 1, Section 11—Reasonableness of Search Incident to Valid Arrest**

As recited above, the reasonableness of a search requires consideration of the totality of the circumstances, which is done by balancing the three <u>Litchfield</u> factors. Although Garcia puts great emphasis upon the lack of suspicion surrounding the search of the container itself, the degree of suspicion is but one factor to be considered. Additionally, these factors must be considered in light of the fact that the search occurred in the context of a search incident to a lawful arrest, and this Court has long recognized that "[a] search incident to a valid arrest is lawful regardless of what it reveals." <u>Farrie v. State</u>, 251 Ind. 681, 683, 266 N.E.2d 212, 214 (1971). We address each factor in turn.

6

*A.  Degree of concern, suspicion or knowledge that an offense has occurred*

This factor may be assessed quickly and ultimately falls in favor of the State.  We have previously recognized that "once a lawful arrest has been made, authorities may conduct a 'full search' of the arrestee for weapons or concealed evidence.  No additional probable cause for the search is required, and the search incident to arrest may 'involve a relatively extensive exploration of the person.'"  Edwards v. State, 759 N.E.2d 626, 629 (Ind. 2001) (citing Robinson, 414 U.S. at 227, 235) (internal quotation and citation omitted).  In the present situation, we read Edwards to support the conclusion that Officer Robinett did not need any additional degree of suspicion specifically in relation to the cylinder container found on Garcia in order to open that container incident to Garcia's lawful arrest.

Furthermore, as Edwards demonstrates, we have seen fit to consider Robinson on prior occasions when addressing searches incident to arrest.  We continue to be persuaded by Robinson regarding the degree of suspicion necessary to conduct a search incident to arrest. The United States Supreme Court set out a clear standard in Robinson.  "A custodial arrest of a suspect based on probable cause is a reasonable intrusion . . . that intrusion being lawful, a search incident to the arrest requires no additional justification."  414 U.S. at 235.  We similarly conclude that it is "the lawful arrest which establishes the authority to search."[3] Id.

Here, Garcia was lawfully placed under arrest for driving his vehicle without a valid driver's license.  It is not disputed that the pat-down search of his person incident to his arrest was permissible.  Under these circumstances, it is likewise true that no additional suspicion was needed

---

[3] Although this Court in Paxton v. State, 263 N.E.2d 636 (Ind. 1970), indicated that something more than a mere arrest is needed to justify a warrantless search, we note two points.  First, Paxton involved the subsequent search of a vehicle, which encompasses a different analysis than when the person of an arrestee is searched incident to arrest.  Second, Paxton was decided prior to multiple Indiana and U.S. Supreme Court cases that have helped clarify the scope of warrantless searches incident to arrest.

7

to search the container found in Garcia's pocket during the normal course of the pat-down search. Again, as provided in Edwards, once a lawful arrest occurs, no additional probable cause is necessary to conduct a "relatively extensive exploration of the person." 759 N.E.2d at 629 (internal citations omitted). Thus, the degree of suspicion weighs in favor of the State.

### B. Degree of intrusion upon the citizen's ordinary activities

Next, we consider the degree to which the search intruded upon Garcia's ordinary activities. In doing so, we continue to look to the totality of the circumstances. First, Garcia had already been subjected to a traffic stop. He was then lawfully arrested, at which time Officer Robinett decided to take him into custody and have his vehicle towed. The brief delay needed to conduct a pat-down search prior to Garcia being taken into custody would have had little to no additional impact on Garcia's ordinary activities, given that he was already being placed under arrest. The arrest alone was a significant intrusion into Garcia's ordinary activities. A pat-down is minimally intrusive in comparison to Garcia being detained, transported to the police station, booked, and held in jail while criminal charges are potentially brought against him.

Second, even if the pat-down were considered in isolation, we similarly conclude that the search was minimally intrusive. In Edmond v. State, the Court of Appeals addressed the reasonableness of a search that occurred after a driver was arrested for not having a valid license. 951 N.E.2d 585, 587 (Ind. Ct. App. 2001). The police officer planned to have the vehicle towed, and he asked the driver to exit the vehicle. Id. At all times, the driver was cooperative and did not make any threats or furtive movements. Id. The officer conducted a pat-down search of the driver and felt a bulge in his pocket. Id. The officer believed that the bulge could be marijuana, and upon removing the item, discovered a baggie containing a substance that was later confirmed to be marijuana. Id. As a result, the driver was subsequently charged with possession of marijuana. Id.

In affirming the reasonableness of the search under Article 1, Section 11, the court conceded that "the search of a person's body is a substantial intrusion." Id. at 592. However, "a

police officer is authorized to conduct a thorough search of an arrestee," and where the police carry out "only a pat-down search of [an arrestee's] clothing . . . the degree of intrusion [is] minimal . . . ." Id.

Moreover, the degree of intrusion in the present case is easily distinguishable from the unreasonable search in Edwards, 759 N.E.2d at 629. Edwards involved the strip search of an arrestee, who had not been charged with any criminal activity, and any charges he potentially faced were all for nonviolent misdemeanor offenses. Id. After considering the highly intrusive nature of being strip searched, the Court concluded that "[w]e do not believe that routine, warrantless strip searches of misdemeanor arrestees, even when incident to lawful arrests, are reasonable . . . ." Id. Edwards exemplifies when a search may be deemed unreasonable and outside the scope of a valid search incident to an arrest.

Garcia attempts to argue that only the opening of the pill container should be considered in conducting the reasonableness analysis, and goes on to claim that a pill container is especially private, making the intrusion in opening the container great. We are not persuaded. As Edmond and Edwards demonstrate, it is the type of search, and all of the attendant circumstances, which is relevant to assessing the degree of intrusion. In addition to our own precedent, this conclusion is also supported by the United States Supreme Court, which has directly provided that:

> A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment *does not require to be broken down in each instance into an analysis of each step in the search*.

Robinson, 414 U.S. at 235 (emphasis added). Again, it is not a single aspect of the search that is considered, but the entirety of the search.

9

Here, Garcia was already subjected to a lawful arrest. The arrest alone would result in Garcia's vehicle being towed and Garcia being detained by police, transported to the police station, booked, and detained at the police station for some additional period of time. The U.S. Supreme Court recognized the intrusive nature of an arrest in Terry v. Ohio by explaining that "[a]n arrest is the initial stage of a criminal prosecution . . . and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows." 392 U.S. 1, 26 (1968). Thus, a brief pat-down search of Garcia's clothing was not an extensive intrusion, especially considering Garcia's arrest. See Stark v. State, 960 N.E.2d 887, 892 (Ind. Ct. App. 2012) (explaining that "the degree of intrusion was minimal" when the defendant "*had already been arrested*, and [the officer] merely retrieved [the defendant's] coat from the vehicle," which lead to the discovery of a loaded handgun) (emphasis added). Because the search of Garcia was brief and minimal, the degree of intrusion also weighs in favor of the State.

### C. *The extent of law enforcement needs*

The needs of law enforcement to conduct a search can vary greatly depending upon the circumstances. Among the most commonly recognized bases for conducting a search includes "ensuring that the arrestee is unarmed, preventing the arrestee from brining contraband into jail, and preventing the destruction of evidence." Edmond, 951 N.E.2d at 592. (internal citation omitted). It is not disputed that Officer Robinett was justified in doing a pat-down search for weapons before placing Garcia into his police cruiser. Officer safety is a paramount concern when an arrestee is taken into custody. Moreover, a search incident to arrest is not limited based on "an assumption that persons arrested for the offense of driving while their licenses have been revoked are less likely to possess dangerous weapons than are those arrested for other crimes." Robinson, 414 U.S. at 234. Rather, "all custodial arrests [are treated] alike for purposes of search justification." Id. at 235.

When the pill container was discovered on Garcia's person, it is insignificant that Officer Robinett acknowledged that the container could contain legal or illegal substances or that he did

not subjectively view Garcia or the container as dangerous. First, we have continually reiterated that "[a] search incident to a valid arrest is lawful regardless of what it reveals." Farrie, 251 Ind. at 683, 266 N.E.2d at 214. Second, the objective reasonableness of the search is controlling, not Officer Robinett's subjective views. Even under a brief stop and frisk, it is well established that the reasonableness of an officer's suspicion turns upon whether "the totality of the circumstances presented a particularized and *objective* basis for the officer's belief. . . ." State v. Keck, 4 N.E.3d 1180, 1184 (Ind. 2014) (internal citation and quotation omitted) (emphasis added). Under an objective standard, we agree that "unknown physical objects may always pose risks, no matter how slight, during the tense atmosphere of a custodial arrest." Riley v. California, 134 S.Ct. 2473, 2485 (2014). In fact, these risks continue to some extent into the ensuing time thereafter the arrest. For example, a risk may still exist while police are transporting an arrestee to a secure location and during booking of that individual at the police station. See Chambers v. State, 422 N.E.2d 1198, 1203 (Ind. 1981) (upholding the validity of a search incident to arrest, regardless of the fact that the search did not occur at the exact time and place of the arrest, but occurred once the police arrived at the police station with the defendant.)

We also seek to reiterate our recent statement in Guilmette. As background, in Guilmette, the defendant challenged the admission of DNA evidence recovered from his shoe because police arrested him for one crime but seized his shoe to search for evidence of a different crime. 14 N.E.3d 38, 41 (Ind. 2014). The defendant argued that the DNA test was an unreasonable search incident to arrest. Id. After upholding the DNA testing of the shoe, the Court explained the practical rationalization for allowing the search: "[I]t would be extremely cumbersome to require law enforcement to take the 'belt-and-suspenders' approach of applying for an independent warrant anytime they wish to examine or test a piece of evidence they have already lawfully seized." Id. at 42. Similarly, we see no basis in the present circumstances why an independent warrant should be required to search an item already lawfully seized.

Thus, we conclude that the final Litchfield factor also weighs in favor of the State. When taking an individual into custody, officer safety is a primary concern. Small and seemingly

innocuous items have the potential to pose a threat. We see no reason to delay the officer's ability to inspect such items once they have already been lawfully seized.

Although our analysis could conclude here, having found that all three of the Litchfield factors weigh in favor of the State, we find it worth noting other persuasive authority that is consistent with our conclusion.

First, this Court has previously upheld, as a valid search incident to arrest, a search that included opening a closed item found on the person of the arrestee. In Chambers, the defendant abducted, sexually assaulted, and then released his victim only after removing her military identification card from her wallet so he could subsequently harass the victim with threatening phone calls. 422 N.E.2d at 1200. Upon further investigation into this offense, police ultimately arrested the defendant at a local tavern. Id. at 1201. Once at the police station, the defendant was ordered to hand over the contents of his pockets, and his wallet was searched in the hope of discovering the victim's military identification card. Id. at 1202. The police instead found a piece of paper with the victim's name, telephone number, and address written on it. Id. The search of the defendant's wallet was upheld as a valid search incident to arrest. Id. at 1203. Even though the police in Chambers had some degree of suspicion regarding what could have been found in the defendant's wallet, the degree of suspicion was not the basis of the Court's holding. Rather, the court provided that "[t]he search of [the defendant's] wallet in the instant case was proper since it was searched as part of a search of his person." Id. at 1203. "The search was incident to the arrest since the wallet . . . was immediately associated with the person of the [arrestee]." Id.

We decline to reach a different conclusion in the present case. Similar to Chambers, the container found on Garcia's person occurred during a valid search incident to arrest. As such, it was permissible for that container to be opened and the contents examined without going to the extent of obtaining an individual warrant.

Additionally, when addressing Fourth Amendment challenges, Indiana courts have upheld searches incident to arrest in which containers found upon the arrestee have been opened. In Klopfenstein v. State, officers detained and arrested the driver and passengers in a vehicle where multiple weapons were in plain view. 439 N.E.2d 1181, 1184 (Ind. Ct. App. 1982). When the driver was subjected to a pat-down search, a closed Tylenol pill bottle in a clear plastic bag was discovered. Id. The officer removed and opened the Tylenol bottle. Id. Inside, the officer discovered a greenish substance, later identified as hashish. Id. After considering both U.S. Supreme Court and Indiana precedent, the court concluded that the search of the Tylenol bottle was a valid search of the person incident to arrest. Id. at 1188. See also Shirley v. State, 803 N.E.2d 251, 253-54, 256 (Ind. Ct. App. 2004) (upholding the validity of a search incident to arrest when an unlabeled pill bottle was found during the search, and the bottle was opened); and Wilson v. State, 754 N.E.2d 950, 953, 957 (Ind. Ct. App. 2001) (upholding the validity of a search incident to arrest after the defendant was arrested for driving with a suspended license, and the pat-down search resulted in finding, among other things, a cigar box, which was opened and found to contain marijuana).

Finally, the U.S. Supreme Court's clear guidance on this issue in Robinson is also persuasive. In Robinson, police conducted a traffic stop and lawfully arrested the driver for operating a motor vehicle after having his license revoked. 414 U.S. at 220. Incident to this arrest, police conducted a pat-down search of the individual's clothing, at which time an object was felt in the breast pocket of the individual's coat. Id. at 222-23. The officer removed the object and discovered that it was a cigarette packet, but at this point, the officer was still unsure what the packet may contain. Id. at 223. Upon opening the cigarette packet, the officer discovered multiple capsules, which were later determined to be heroin. Id.

The Supreme Court first noted that "a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment," and encompasses searching the person of the arrestee. Id. at 224. While many reasons support the validity of a search incident to arrest, the Robinson court disagreed with the "suggestion that there must be litigated in each case

13

the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest," and declined to find "such a case-by-case adjudication" necessary. Id. at 235. The authority to search incident to arrest does not depend upon "what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." Id. The Court concluded that the arrest gave rise to the authority to search the individual, and "it is of no moment that [the officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed." Id. at 236. The discovery of the cigarette packet during the course of the lawful search, "entitled [the officer] to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as fruits, instrumentalities, or contraband probative of criminal conduct." Id. (internal quotation and string citation omitted).

Although the federal interpretation of reasonable searches under the Fourth Amendment is not binding upon this Court's reasonableness analysis under Article 1, Section 11 of the Indiana Constitution, in the present situation, we reach the same conclusion. Under Article 1, Section 11, opening a container found on the person of an arrestee in the course of a search incident to valid arrest will not automatically be deemed unreasonable. In the present case, the search of the container found on Garcia's person during the course of a pat-down search was reasonable under Article 1, Section 11.

**Conclusion**

We affirm the trial court's denial of Garcia's motion to suppress the pill container found on his person during a search incident to a valid arrest. In doing so, we hold that the search of Garcia's person, which included opening the container, was within the scope of a search incident to a lawful arrest and reasonable under Article 1, Section 11 of the Indiana Constitution.

Rush, C.J., Dickson and Massa, J.J., concur.

Rucker, J., concurs in result only.