## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 04 2017, 8:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James C. Spencer
Dattilo Law Office
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bruce Ashby, | August 4, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 39A01-1610-CR-2341 |
| v. | Appeal from the Jefferson Circuit Court |
| State of Indiana, | The Honorable Steven M. Fleece, Senior Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 39C01-1508-F2-773 |

**Barnes, Judge.**

# Case Summary

Bruce Ashby appeals his conviction by bench trial of attempted dealing in a narcotic drug as a Level 2 felony. We affirm.

# Issues

Ashby presents three issues:

> I. whether the trial court erred in considering a prior ruling on a motion to suppress to be res judicata;

> II. whether the trial court abused its discretion in admitting certain evidence; and

> III. whether there was sufficient evidence to sustain his conviction.

# Facts

On August 6, 2015, Harry Mercer voluntarily went to the Madison Police Department and met with Detectives Jonathon Simpson and Kurt Wallace. Mercer informed the detectives that he had been approached on multiple occasions at a local bar by someone named Bruce, who wanted to sell him prescription pills. Mercer did not know Bruce's last name. However, Mercer told Detective Simpson that Bruce lived on Lincoln Avenue in Madison, wore an ankle monitor, and was on house arrest for selling prescription pills. From this information, Detective Simpson recognized Bruce as Bruce Ashby. Detective Simpson showed Mercer a photograph of Ashby, and Mercer identified him as the man he knew as Bruce. Mercer was not a confidential

informant and was referred to by the detectives as a "concerned citizen" or a "source of information." Tr. p. 136. Mercer received no favorable treatment in exchange for working with the detectives.

[4]     While in the detectives' presence, Mercer sent a text message to Ashby that read, "Did you say they were Perks? If so [I] will take 20 of them and how much each so [I] can stop and get the cash out of the bank [sic] please text me back and let me know [sic] do I need to come to your house or [the bar]?"[1] State's Ex. 3. Approximately five minutes later, Ashby replied by text message, "Five my house." State's Ex. 19. Mercer was no longer in the presence of the detectives when the reply was sent, as he and the detectives parted ways shortly after Mercer sent the text message to Ashby.

[5]     Detective Simpson and Detective Wallace travelled to the area where Ashby lived. In route, they used a software system that allowed them to place a third-party call to Ashby's cell phone, making it appear as if the call originated from Mercer's cell phone.[2] Once the call connected, Mercer asked Ashby to meet him at a corner near Ashby's house in twenty to thirty minutes because Mercer

---

[1] "Perks" is street terminology for Percocet, a controlled substance that contains oxycodone and acetaminophen. Tr. pp. 14-15, 70, 152.

[2] The software system, called Callyo, is a law enforcement telephone communication system. It allowed the detectives to create a three-way phone call between themselves, Mercer, and Ashby. Even though the detectives initiated the call, the software made it appear that Mercer placed the call to Ashby, and the caller I.D. on Ashby's phone displayed Mercer's phone number – not that of the detectives. Once the call connected, the software allowed the detectives to listen into the conversation between Mercer and Ashby without being detected, and the software automatically recorded and downloaded the call to a server for future access. *See* Tr. pp. 82-84.

had "somebody with [him]" and he did not want to show that person where Ashby lived. State's Ex. 4. Mercer also relayed the information in text messages. Once the detectives arrived in the area where Ashby lived, a second call was made using the same system. Mercer told Ashby he would be at the prearranged location in five minutes. Ashby replied, "I'm running around up here on the street." State's Ex. 5. Both phone calls were monitored and recorded by the detectives. Although Mercer was not in the physical presence of the detectives when the calls were made, Detective Simpson recognized Ashby's and Mercer's voices on the calls.

[6] The detectives saw Ashby standing in the street where he agreed to meet Mercer. Ashby was leaning into a vehicle, conversing with someone inside. After the vehicle drove away, the detectives got out of their unmarked vehicle and approached Ashby. The detectives recorded the interaction with Ashby using an audio recording device.

[7] Detective Simpson asked Ashby if he was on house arrest, and Ashby answered in the affirmative. Detective Wallace then dialed Ashby's cell phone number, and Ashby's phone rang in the presence of the detectives. Detective Simpson told Ashby that he and Detective Wallace had information that Ashby was going to "sell pills to somebody." State's Ex. 6. Detective Simpson then asked Ashby if he had any pills on his person, and Ashby replied that he did not. Detective Simpson then searched Ashby. A pack of cigarettes that contained nineteen round white pills was found in Ashby's left back pocket. Ashby was Mirandized and then questioned about the pills and who he was to meet. He

stated that he was helping a friend who had cancer, that he had nineteen pills, and that he was selling the pills for five dollars each.

[8] The detectives removed Ashby's cell phone. Ashby exercised his *Pirtle* rights and did not consent to a search of his phone. Ashby was handcuffed and eventually transported to jail. His phone later was searched after a search warrant was obtained, and records of the text messages and phone calls that were sent and received on the day of the incident were found.

[9] Ashby was charged with attempted dealing in a narcotic drug and dealing in a narcotic drug, both as Level 2 felonies. Ashby filed a motion to suppress, alleging that the evidence seized by the detectives was unlawfully obtained because the detectives did not have a search warrant or justification for a warrantless search. After a hearing, the trial court denied the motion.

[10] Ashby then filed a motion to certify the denial of the motion for interlocutory appeal, which the trial court granted. This court, however, declined to accept jurisdiction over the interlocutory appeal.

[11] A bench trial was held August 1, 2017, following which Ashby was found guilty as charged. The trial court merged the convictions and sentenced Ashby to twenty years executed for his conviction of Level 2 felony attempted dealing in a narcotic drug. Ashby now appeals.

# Analysis

## *I. Res Judicata*

[12] Ashby maintains that the trial court erred when it determined that further consideration of his motion to suppress was precluded because the matter was res judicata. At the start of Ashby's bench trial, the trial court noted that Ashby's motion to suppress had been denied and that this court had declined to accept jurisdiction over Ashby's interlocutory appeal of the denial. After the bench trial began, Ashby renewed his objection to the admission of the evidence in question. The trial court responded:

> And that position is, of course, consistent with what you stated before and with your prior motion to suppress that we've reference to. I have examined the briefs in support of the motion to suppress and the briefs opposed to it. I also consider that under these circumstances uh – issues with regard to suppression are res judicata, although the Court of Appeals has not spoken either way on that, and I will certainly show a continuing motion and objection to these things, but I would at this time deny the motion.

Tr. p. 47.

[13] The trial court erred in determining that further consideration of Ashby's motion to suppress was precluded by res judicata. It is well-settled that a pretrial ruling on a motion to suppress is not a final judgment for res judicata purposes and that such a ruling may be modified by the court that issued the ruling or another court being asked to reconsider the ruling. *See Joyner v. State*, 678 N.E.2d 386, 393 (Ind. 1997); *see also Gasaway v. State*, 249 Ind. 241, 243,

231 N.E.2d 513, 514 (1967) (holding that pretrial ruling on motion to suppress was "in no sense a final judgment" for res judicata purposes). However, we find the error to be harmless. *See* Ind. Trial Rule 61 (court at every stage of proceeding must disregard any error or defect in proceeding which does not affect substantial rights of party). Here, after the trial court denied Ashby's motion to suppress, Ashby renewed his objection to the admission of the evidence, and his challenge to the admission of the evidence was properly preserved for this court's review. We fail to see, and Ashby has not shown, how he was harmed by the trial court's error or how the error affected his substantial rights. Reversal is not warranted.

## II. Admissibility of Evidence

[14] Ashby next argues that the warrantless search of his person violated the Fourth Amendment to the United States Constitution.[3] Although Ashby originally challenged the admission of the evidence through a motion to suppress, he now challenges the admission of that evidence at trial. Therefore, the issue is appropriately framed as whether the trial court abused its discretion in admitting the evidence. *See Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[15] The trial court has broad discretion to rule on the admissibility of evidence. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). We review its rulings "for

---

[3] Although Ashby asserts that this search also violated his rights under Article I, Section 11 of the Indiana Constitution, he presents no separate argument and analysis with respect to the state constitution. Thus, any separate state constitutional claim is waived because of his failure to make a cogent argument under that provision. *See Davis v. State*, 907 N.E.2d 1043, 1048 n.10 (Ind. Ct. App. 2009).

abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id*. at 260. But when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo. *Kelly v. State,* 997 N.E.2d 1045, 1050 (Ind. 2013).

[16] The Fourth Amendment to the United States Constitution protects persons from unreasonable search and seizure by prohibiting, as a general rule, searches and seizures conducted without a warrant supported by probable cause. U.S. Const. amend. IV.

> As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible in a prosecution against the victim of the unlawful search or seizure absent evidence of a recognized exception. *Mapp v. Ohio,* 367 U.S. 643, 649-55, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) (extending exclusionary rule to state court proceedings). It is the State's burden to prove that one of these well-delineated exceptions is satisfied. [*Berry v. State*, 704 N.E.2d 462, 465 (Ind. 1998)].

*Clark*, 994 N.E.2d at 260.

[17] A search incident to a lawful arrest is an exception to the warrant requirement under the Fourth Amendment. *Fentress v. State*, 863 N.E.2d 420, 423 (Ind. Ct. App. 2007). A suspect is considered under arrest when a police officer interrupts his freedom and restricts his liberty of movement. *Id*. The fact that a police officer does not inform a defendant he is under arrest prior to a search

does not invalidate the search incident to arrest exception as long as there is probable cause to make an arrest. *Id.* Probable cause for an arrest exists if at the time of the arrest the officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the suspect has committed the criminal act in question. *Id.* A police officer's subjective belief concerning whether he had probable cause to arrest a defendant has no legal effect. *Id.* An arrest is lawful if it is supported by probable cause. *Id.* A search incident to lawful arrest allows the arresting officer to conduct a warrantless search of the arrestee's person and the area within his immediate control. *Id.* at 423-24. A search incident to a valid arrest is lawful regardless of what it reveals. *Garcia v. State*, 47 N.E.3d 1196, 1200 (Ind. 2016).

[18] Ashby maintains that the detectives lacked probable cause to arrest him, prior to searching him and seizing the cigarette package that contained the prescription pills, because Ashby did not make any statements that he intended to sell the pills to Mercer, and because the detectives first needed to find the pills before they could establish probable cause for the arrest. We disagree.

[19] Mercer, a concerned citizen, voluntarily travelled to the Madison Police Department to report that Ashby was trying to sell him prescription pills that contained oxycodone, a narcotic drug. Mercer provided details about Ashby that the detectives knew to be true. The detectives presented Mercer with a picture of Ashby, and Mercer confirmed that the person in the picture was the individual attempting to sell him the prescription pills. In the presence of two police detectives, and at the detectives' direction, Mercer sent a text message to

Ashby indicating a desire to purchase prescription pills. Ashby provided Mercer with a price per pill and a location where the transaction would take place.

[20] The detectives then travelled to the designated location and discovered Ashby standing there. Before approaching Ashby, the detectives twice used a third-party calling device to confirm that Ashby was the individual Mercer had contacted about purchasing the pills. From the calls, the detectives confirmed that Ashby was waiting for Mercer. After approaching Ashby, one of the detectives placed a call to Ashby's cell phone, using the number obtained from Mercer, to further confirm that Ashby was the individual who had agreed to sell Mercer prescription pills.

[21] Based upon the information provided by Mercer, the phone calls between Ashby and Mercer, and the detectives' observations, probable cause existed to arrest Ashby for attempted dealing in a narcotic drug. The detectives were not required to inform Ashby that he was under arrest. *See Fentress*, 863 N.E.2d at 423. The fact that Ashby was not formally placed under arrest at the time he was searched did not invalidate the search. *See id*. Because there was probable cause to arrest Ashby at the time the search took place, this was a valid search incident to arrest; the prescription pills were properly seized; the detectives'

search and seizure did not violate the Fourth Amendment; and the trial court did not abuse its discretion in admitting the pills into evidence at trial.[4]

### III. Sufficiency of the Evidence

[22]   Ashby contends that the evidence is insufficient to sustain his conviction because the State failed to prove that he possessed at least ten grams of oxycodone, which was required to convict him of Level 2 felony attempted dealing in a narcotic drug. At trial, Brandy Cline, an Indiana State Police Laboratory forensic scientist, testified that she performed three examinations of one of the pills seized from Ashby and determined that the pill contained the controlled substance oxycodone, as well as acetaminophen, a non-controlled substance. She determined that the one pill weighed 0.56 grams.

[23]   Cline then performed a visual examination of the remaining pills, referring to a desk-reference manual used to identify medications. She determined that the remaining pills "could contain oxycodone and acetaminophen" because they were identical to the tested pill; "they were all visually consistent as far as the markings, color and size and shape of [pills that could contain oxycodone and acetaminophen]." Tr. pp. 153, 154. Cline did not confirm the actual contents

---

[4] Because we conclude that the detectives' search and seizure did not violate the Fourth Amendment to the United States Constitution, we need not address Ashby's argument that his statements to the detectives and the evidence found on his cell phone should not have been admitted at trial under the fruit of the poisonous tree doctrine.

of the remaining pills, but found the total weight of the remaining pills to be 10.02 grams.

[24] According to Ashby, the State failed to prove he possessed at least ten grams of oxycodone because "the State failed to prove . . . that all 19 tablets contained oxycodone and accordingly that the total weight of the oxycodone tablets (pure or adulterated) exceeded 10 grams." Appellant's Brief p. 19. Ashby maintains that "[a]t most, the State proved [he] was in possession of one tablet containing oxycodone, weighing 0.56 grams." *Id*. We are unpersuaded by Ashby's argument and find that the evidence was sufficient to prove Ashby attempted to deliver at least ten grams of a narcotic drug.

[25] When we review the sufficiency of the evidence to support a criminal conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We neither reweigh the evidence nor assess witness credibility. *Id*. Unless no reasonable factfinder could conclude the elements of the crime were proven beyond a reasonable doubt, we will affirm the conviction. *Id*. That is, we will hold the evidence sufficient if an inference may reasonably be drawn from it to support the verdict. *Id*. at 147.

[26] Indiana Code Section 35-48-4-1(a)(2)(C) provides that a person who possesses with intent to deliver a narcotic drug, pure or adulterated, classified in schedule I or II commits dealing in a narcotic drug, a Level 5 felony. However, the offense is a Level 2 felony if "the amount of the drug involved is at least ten (10)

grams." I.C. § 35-48-4-1(e)(1). "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime." I.C. § 35-41-5-1(a). "An attempt to commit a crime is a felony or misdemeanor of the same level or class as the crime attempted." *Id.* The weight of a controlled substance may be proven by either evidence of its actual, measured weight or by demonstrating that the quantity is so large as to permit a reasonable inference that the element of weight has been established. *Boggs v. State*, 928 N.E.2d 855, 866 (Ind. Ct. App. 2010), *trans. denied*.

[27]     Here, Ashby agreed to sell Mercer twenty "perks" – that is, pills that contained oxycodone, a narcotic drug classified in schedule II. Ashby went to the location where he and Mercer agreed to meet. Nineteen pills were found on Ashby's person, seized, and submitted to the State Police laboratory. Cline testified that during her tenure with the laboratory, she had analyzed approximately 6,000 drug samples. She tested one of the pills seized from Ashby and determined that it contained oxycodone. Using a desk-reference manual, she identified the other pills as being identical to the pill that she tested. She found that one pill weighed 0.56 grams, that the remaining eighteen pills together weighed 10.02 grams, and that the total weight of the nineteen pills was 10.58 grams. Based on the foregoing, we find that sufficient evidence was presented to prove Ashby possessed at least ten grams of a narcotic drug.

# Conclusion

[28]    The trial court's error in determining that further consideration of Ashby's motion to suppress was precluded by res judicata was harmless, and the trial court properly admitted evidence discovered during a search of Ashby at the time of his arrest. The State presented sufficient evidence to sustain Ashby's conviction for Level 2 felony attempted dealing in a narcotic drug. The judgment of the trial court is affirmed.

[29]    Affirmed.

Baker, J., and Crone, J., concur.