## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 31 2020, 7:50 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rebecca L. Gray
The Law Offices of Rebecca Gray, LLC
Carmel, Indiana

Kevin Munoz
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Tellez-Salinas,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 31, 2020

Court of Appeals Case No.
19A-CR-486

Appeal from the
Hendricks Superior Court

The Honorable
Stephenie LeMay-Luken, Judge

Trial Court Cause No.
32D05-1804-F2-8

**Kirsch, Judge.**

[1] After a search of David Tellez-Salinas's ("Tellez-Salinas") truck uncovered narcotics, the State charged Tellez-Salinas with dealing in a narcotic drug, a Level 2 felony.[1] Tellez-Salinas filed three motions to suppress, which the trial court denied. Tellez-Salinas now brings this permissive interlocutory appeal, raising three issues, which we restate as:

I. Whether the trial court should have suppressed documents found in the truck;

II. Whether Tellez-Salinas's statements should have been suppressed because he was not advised of his Miranda rights; and

III. Whether the narcotics should have been suppressed because the canine sweep extended the duration of the traffic stop beyond the time needed to write a warning ticket and because there was no reasonable suspicion to support a canine sweep.

[2] We affirm.

## Facts and Procedural History

[3] On April 5, 2018, Captain Benjamin M. Pyatt ("Captain Pyatt") of the Brownsburg Police Department was contacted by the Drug Enforcement Administration ("DEA") to look for a white Ford extended-cab truck with a paper license plate that was travelling from Dallas, Texas to Dayton, Ohio.

---

[1] *See* Ind. Code § 35-48-4-1(a)(1), (e)(1).

The DEA suspected narcotics trafficking. *Tr. Vol. II* at 8, 61-62. At approximately 2:35 p.m., Captain Pyatt observed a vehicle traveling on Interstate 70 in Hendricks County that "fit[] that exact description to a T." *Id.* at 8, 10, 61. Captain Pyatt saw the truck change lanes with an improper signal and follow another vehicle too closely, so he initiated a traffic stop. *Id.* at 8-9, 39-40.

[4] Captain Pyatt approached the passenger door and knocked on the window. *Id.* at 9. Tellez-Salinas, a Mexican national whose first language is Spanish,[2] motioned to Captain Pyatt to open the passenger door, which Captain Pyatt did. *Id.* Captain Pyatt asked Tellez-Salinas for his driver's license and vehicle registration. *Id.* at 11. Tellez-Salinas gave Captain Pyatt a document labeled "Buyer's Tag Receipt" ("vehicle purchase receipt"), a document apparently issued by the State of Texas that provided information about the VIN number, make, model, year, and color of the truck but that did not identify the purchaser of the truck. *Id.* at 12; *State's Ex.* 1. Tellez-Salinas also gave Captain Pyatt a "Payment Receipt" ("insurance payment receipt") bearing the name Juan Mendoza ("Mendoza"), which appeared to be a receipt for the purchase of vehicle insurance. *Id.* at 13-14; *State's Ex.* 2. Tellez-Salinas told Captain Pyatt that he owned the truck, even though the insurance payment receipt listed Mendoza as the insured. *Tr. Vol. II* at 13. Upon further questioning, Tellez-

---

[2] *Tr. Vol. II* at 5, 45, 46, 80.

Salinas said that an unnamed friend had purchased the truck and that he recently bought the truck from the friend. *Id*. at 14.

[5]     Captain Pyatt took Tellez-Salinas's documents to his squad car to prepare a written warning. *Id*. at 15, 51-52. After a few minutes, he returned to the truck and asked Tellez-Salinas to join him in the squad car. *Id.* at 54. Captain Pyatt did this because he was having difficulty filling out the ticket as he could not confirm Tellez-Salinas's information. *Id.* at 52, 57-58. Captain Pyatt did not handcuff Tellez-Salinas. *Id.* at 17. During questioning, Tellez-Salinas told Captain Pyatt that the week before he had flown from Mexico to Dallas and was now driving to Dayton, Ohio to visit his cousins. *Id*. at 15. Tellez-Salinas also told Captain Pyatt that he did not know the address of his cousins but intended to call them when he arrived in Dayton. *Id*.

[6]     While trying to confirm information about Tellez-Salinas and the truck, Captain Pyatt contacted Major Dwight Simmons ("Major Simmons") of the Putnam County Sheriff's Office to bring his police dog to perform a canine sweep of the truck. *Id*. at 59-61. Major Simmons arrived at the scene approximately eighteen minutes after Captain Pyatt stopped Tellez-Salinas. *Id*. at 63; *Appellee's Br.* at 9. As Major Simmons performed the canine sweep, Captain Pyatt was still trying to confirm Tellez-Salinas's information before issuing the traffic warning. *Tr. Vol. II* at 61. Captain Pyatt testified that when Major Simmons arrived, "I still [didn't] have the documents. I [didn't] have any documents for this vehicle." *Id.* These difficulties made the stop somewhat longer than a more routine stop for a traffic infraction. *Id*. at 18. To expedite

the process, Captain Pyatt decided to not run the truck's VIN number and instead relied on the information that Tellez-Salinas provided. *Id.* at 59.

[7] The police dog alerted on the rear passenger side of the truck. *Id*. at 18-19, 73-74, 78. When they examined the truck more closely, Captain Pyatt and Major Simmons noticed tooling marks near the rear wheel lug nuts. *Id*. at 21, 65-66. They asked Tellez-Salinas to drive the truck to a nearby rest stop, and Tellez-Salinas complied. *Id*. at 22-26.

[8] Because of the tooling marks, Captain Pyatt and Major Simmons wanted to remove the rear wheel, but since they did not have the proper tools, Major Simmons called Curtis Towing Service ("Curtis Towing"). *Id*. An employee of Curtis Towing brought the truck to the Curtis Towing shop, so it could be raised on a lift to allow Captain Pyatt and Major Simmons to remove the wheel. *Id*. at 24-26. They discovered that the rear emergency brakes had been replaced by a cylinder fabricated out of sheet metal. *Id*. at 27. Inside of the fabricated container they found two packages of suspected narcotics. *Id*. at 28, 70; *State's Ex*. 4. At this point, Tellez-Salinas was read his Miranda rights. *Id*. at 78.

[9] The State charged Tellez-Salinas with Level 2 felony dealing in a narcotic drug. *Appellant's App. Vol. 2* at 15. Tellez-Salinas filed three motions to suppress evidence discovered by the police. *Id*. at 25-26, 28-33. He argued there was no reasonable suspicion to justify the initial stop, that the dog sniff extended the duration of the stop beyond the time necessary for Captain Pyatt to issue a

traffic warning, and that Captain Pyatt failed to Mirandize Tellez-Salinas before Captain Pyatt questioned him in the squad car. *See id*. At an evidentiary hearing on the motions to suppress, Tellez-Salinas testified that he "felt locked up at all times" during the traffic stop. *Tr. Vol. II* at 84. On January 14, 2019, the trial court denied the motions to suppress. *Appellant's App. Vol. 2* at 59, 66.

[10] On January 28, 2019, Tellez-Salinas asked the trial court to certify its ruling for interlocutory appellate review, the trial court granted Tellez-Salinas's request, and Tellez-Salinas timely filed his motion with this court for permission to bring this interlocutory appeal. *Id.* at 60, 65-66. On April 5, 2019, we granted Tellez-Salinas's request. *Id.* at 66. Tellez-Salinas now appeals.

## Discussion and Decision

## Standard of Review

[11] The standard of review for a ruling on a motion to suppress is like other sufficiency issues. *Garcia v. State*, 47 N.E.3d 1196, 1199 (Ind. 2016). We determine whether substantial evidence of probative value supports the trial court's ruling. *Litchfield v. State*, 824 N.E.2d 356, 358 (Ind. 2005). We will not reweigh the evidence, and we consider conflicting evidence most favorably to the ruling of the trial court. *Garcia*, 47 N.E.3d at 1199. We also consider substantial and uncontested evidence favorable to a defendant. *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006). We will disturb the trial court's ruling only upon a showing of abuse of discretion. *Hudson v. State*, 129 N.E.3d 220, 224 (Ind. Ct. App. 2019). However, we apply a de novo standard on the trial

court's conclusions about the constitutionality of a search or seizure. *Garcia*, 47 N.E.3d at 1199.

# I.  Seizure of the Documents

[12]  Tellez-Salinas argues that Captain Pyatt committed an illegal warrantless search and seizure of the truck's purchase receipt and the insurance payment receipt (together, "the documents"). Tellez-Salinas claims that Captain Pyatt, without Tellez-Salinas's consent, leaned into the truck and rummaged through the truck until he found the documents. Tellez-Salinas contends that Captain Pyatt's actions violated the Fourth Amendment to the United States Constitution because there was no probable cause to search for the documents. As to the Indiana Constitution, Tellez-Salinas alleges the search and seizure was unreasonable.

> The Fourth Amendment prohibits unreasonable searches and seizures by the government, and its safeguards extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. A police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity maybe afoot. Indiana has adopted this analysis for the purpose of determining the legality of an investigatory stop under Article 1, Section 11 of the Indiana Constitution.

*Gunn v. State*, 956 N.E.2d 136, 139 (Ind. Ct. App. 2011) (citations omitted).

[13] Under the Fourth Amendment, police who are acting upon reasonable suspicion of a traffic infraction may "check [the] driver's license and the registration of the automobile[.]" *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). This is because part of the mission of nearly any traffic stop is "inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015); *see also Browder v. State*, 77 N.E.3d 1209, 1214 (Ind. Ct. App. 2017) (tasks an officer may undertake include determining whether there are outstanding warrants against the driver), *trans. denied*; *Rosenbaum v. State*, 930 N.E.2d 72, 75-76 (Ind. Ct. App. 2010), *trans. denied*. Likewise, under the Indiana Constitution, "[w]here an officer stops a vehicle for a traffic violation, a request for the driver's license and vehicle registration, a license plate check, a request to search the driver's vehicle and an inquiry regarding whether the driver has a weapon in the vehicle are within the scope of reasonable detention." *Harper v. State*, 922 N.E.2d 75, 81 (Ind. Ct. App. 2010), *trans. denied*.

[14] Here, the traffic stop was permissible under both the United States and Indiana Constitutions because Captain Pyatt had reasonable suspicion that Tellez-Salinas had committed traffic infractions by changing lanes with an improper signal and following another vehicle too closely. *Tr. Vol. II* at 8-9, 39-40. *See Gunn*, 956 N.E.2d at 139. Therefore, both the United States and Indiana Constitutions allowed Captain Pyatt to ask Tellez-Salinas to produce a driver's license, the truck's registration, and proof of insurance. *See Rodriguez*, 135 S. Ct. at 1615; *Browder*, 77 N.E.3d at 1214; *State v. Quirk*, 842 N.E.2d 334, 340 (Ind.

2006); *Harper*, 922 N.E.2d at 81. Furthermore, Tellez-Salinas provided those documents voluntarily.

[15] Tellez-Salinas asks us to reweigh the evidence when he claims that he did not consent to the seizure of the documents, which we do not do. *Garcia*, 47 N.E.3d at 1199. The evidence most favorable to the trial court's ruling showed that when Captain Pyatt stood on the passenger side of the truck, Tellez-Salinas made a gesture indicating that Captain Pyatt could open the passenger door. *Tr. Vol. II* at 9, 11. To the extent that Tellez-Salinas argues that when Captain Pyatt leaned into the truck he impermissibly intruded into the truck, the trial court could have reasonably concluded that Tellez-Salinas's gesture to Captain Pyatt indicated that Tellez-Salinas consented to Captain Pyatt reaching into the truck. The trial court did not abuse its discretion in denying Tellez-Salinas's request to suppress the documents.

## II. Miranda Warnings

[16] Tellez-Salinas argues that the trial court abused its discretion in denying his motion to suppress the statements he made during the traffic stop. He claims he made those statements while in custody without the benefit of Miranda warnings. Tellez-Salinas specifically argues that he was in custody once Captain Pyatt asked Tellez-Salinas to accompany him to his squad car and that "any reasonable person seated in [a] marked police patrol vehicle next to an officer in full uniform would not believe he was free to leave." *Appellant's Br.* at 21.

[17]   If a person in custody is subjected to interrogation, "he must first be informed in clear and unequivocal terms that he has the right to remain silent." *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966). Miranda warnings are meant to preserve Fifth Amendment rights of a person during "incommunicado interrogation of individuals in a police-dominated atmosphere." *Id.* at 445. An atmosphere is "police-dominated" if it inherently undermines a person's will to resist and compels him to speak where he would not normally do so. *Wells v. State*, 30 N.E.3d 1256, 1260 (Ind. Ct. App. 2015), *trans. denied*, *cert. denied*, 139 S. Ct. 906 (2016). The duty to give Miranda warnings does not arise until an officer restricts a person's freedom as to render him in custody. *Crocker v. State*, 989 N.E.2d 812, 818 (Ind. Ct. App. 2013), *trans. denied*; *Gauvin v. State,* 878 N.E.2d 515, 520-21 (Ind. Ct. App. 2007), *trans. denied*. A person is in custody if a reasonable person in the same situation would not feel free to leave. *Crocker*, 989 N.E.2d at 818. "Whether a person was in custody depends upon objective circumstances, not upon the subjective views of the interrogating officers or the [person] being questioned." *Id*. In determining whether an individual was in custody, a court must examine all circumstances surrounding the interrogation, "but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id*. at 818-19. Factors to weigh include the degree to which police controlled the scene and both the location and nature of the questioning, especially where an officer uses deceit to induce a person to incriminate himself or where the questions are "prolonged, coercive, and accusatory." *Id*. at 819.

[18]    "[A] person temporarily detained in an ordinary traffic stop is not in custody for the purposes of *Miranda*." *State v. Brown*, 70 N.E.3d 331, 336 (Ind. 2017) (citing *Pennsylvania v. Bruder*, 488 U.S. 9, 10-11 (1988)). "[Q]uestioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek." *Berkemer v. McCarty*, 468 U.S. 420, 438 (1984); *see also Brown*, 70 N.E.3d at 336.

[19]    Here, the objective circumstances show that Tellez-Salinas was not in custody during the traffic stop, even while sitting in Captain Pyatt's squad car. *See Brown*, 70 N.E.3d at 336; *Crocker*, 989 N.E.2d at 818. Captain Pyatt did not handcuff Tellez-Salinas. *See Hudson*, 129 N.E.3d at 225 (a person who is handcuffed is in custody). Captain Pyatt did nothing else to restrict Tellez-Salinas's movements, and the traffic stop scene was not police dominated as Captain Pyatt was the only officer on the scene when Tellez-Salinas made the statements he now wishes to suppress. *See Berkemer*, 468 U.S. at 421 (finding the atmosphere surrounding a traffic stop is substantially less police dominated than atmosphere surrounding the kinds of interrogation at issue in Miranda).

[20]    The nature of Captain Pyatt's questions also demonstrated that Tellez-Salinas was not in custody. Captain Pyatt did not bring Tellez-Salinas to his squad car to submit Tellez-Salinas to coercive and accusatory questioning, but to get Tellez-Salinas's help in confirming his information so Captain Pyatt could issue the warning ticket. *See Berkemer*, 468 U.S. at 438; *Brown*, 70 N.E.3d at 336.

Tellez-Salinas's help was necessary because the unconventional nature of Tellez-Salinas's paperwork made it more difficult to confirm information about both Tellez-Salinas and the truck. Also, withdrawing Tellez-Salinas from the noisy Interstate 70 traffic to the relative quiet of Captain Pyatt's squad made it easier for Captain Pyatt to write the traffic warning, especially because of Tellez-Salinas's limited English skills. *Tr. Vol. II* at 5, 45, 46, 53, 80, 83. These "particularized circumstances" made it reasonably necessary to require Tellez-Salinas to submit to routine questioning in Captain Pyatt's squad car. *See Wilson v. State*, 745 N.E.2d 789, 793 (Ind. 2001). Furthermore, the questioning in the squad car was not prolonged. Captain Pyatt hastened the process by relying on the information provided by Tellez-Salinas and not running the VIN number for the truck. *Tr. Vol. II* at 59.

[21] Finally, Tellez-Salinas's testimony that he "felt locked up at all times" during the stop does not mean he was in custody. *Id*. at 84. We are guided not by his subjective perceptions but by the objective circumstances of the stop. *See Crocker*, 989 N.E.2d at 818. Those objective circumstances showed that Captain Pyatt asked Tellez-Salinas to accompany him to his squad car only because of particularized circumstances, i.e., the unique challenges in writing the traffic warning because of the unconventional paperwork Tellez-Salinas provided. Captain Pyatt's questions were not prolonged or accusatory but were designed to simply obtain the necessary information to write the warning ticket. By deciding to not search for the VIN number of the truck and relying on the information provided by Tellez-Salinas himself, Captain Pyatt likely made the

stop shorter than it might have been. *Id.* at 59. Thus, there was no formal arrest or restraint on Tellez-Salinas's movements akin to an arrest, and we conclude that Tellez-Salinas was not in custody when Captain Pyatt questioned him. *See Crocker*, 898 N.E.2d at 818-19. Tellez-Salinas was not entitled to Miranda warnings, and the trial court did not abuse its discretion in denying Tellez-Salinas's motion to suppress the statements.[3]

## III. Duration of Traffic Stop

[22] Tellez-Salinas raises two related arguments regarding the duration of the traffic stop. First, he claims that Captain Pyatt unduly extended the duration of the stop by asking Major Simmons to bring his police dog to perform a canine sweep. Second, he argues that there was no reasonable suspicion to justify the canine sweep, correctly noting that under both the United States and Indiana Constitutions, a police officer must have reasonable suspicion to conduct a canine sweep if the duration of the traffic stop was unduly extended. As to his first argument, Tellez-Salinas contends: "Within that [eighteen minutes], [Captain] Pyatt could have written the warning ticket and the purpose of the stop could have been completed." *Appellant's Br.* at 23-24.

> [A] reasonable narcotics dog sweep is not a search for the
> purposes of the Fourth Amendment or Article 1, § 11. However,
> such a sweep is an unreasonable investigatory detention if the
> motorist is held for longer than necessary to complete the

---

[3] Because we find that Tellez-Salinas was not entitled to Miranda warnings because he was not in custody, we need not address his claim that he was subjected to custodial *interrogation*.

officer's work related to the traffic violation and the officer lacks reasonable suspicion that the motorist is engaged in criminal activity.

*Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013) (internal citations omitted).

[23] In *Rodriguez*, 135 S. Ct. at 1612, the United States Supreme Court held that "[a] seizure justified by only a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id*. (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). *Rodriguez* explained that, beyond determining whether to issue a ticket, an officer's mission includes ordinary inquiries incident to the traffic stop such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 135 S. Ct. at 1615. The court ruled that absent reasonable suspicion, police may not extend an otherwise completed traffic stop to conduct a dog sniff. *Id*. The critical question is whether conducting the sniff prolongs the traffic stop. *Id*. at 1616.

[24] In *Hansbrough v. State*, we held that a dog sniff that occurred within sixteen minutes of the traffic stop did not unduly extend the stop because the officer who initiated the stop had not yet completed his paperwork and was still on the phone checking for outstanding warrants when the canine unit arrived. 49 N.E.3d 1112, 1114 (Ind. Ct. App. 2016), *trans. denied*. In *Washington v. State*, we held that a canine sweep initiated eleven minutes after the defendant was pulled

over did not extend the duration of the stop beyond the time necessary for the police officer to write a ticket. 42 N.E.3d 521, 523-24 (Ind. Ct. App. 2015), *trans. denied*, *cert denied*, 137 S. Ct. 35 (2016). Similarly, in *Doctor v. State*, we held that a period of eight to twelve minutes after the traffic stop commenced to perform a canine sweep was not an unreasonable amount of time for a traffic stop. 57 N.E.3d 846, 855 (Ind. Ct. App. 2016). *See also State v. Gibson*, 886 N.E.2d 639, 642 (Ind. Ct. App. 2008) and *State v. Cassady*, 56 N.E.3d 662, 665-66 (Ind. Ct. App. 2016).

[25] Here, we need not address Tellez-Salinas's argument that there was no reasonable suspicion supporting the canine sweep because we find that the canine sweep did not unreasonably extend the stop, which makes Tellez-Salinas's reasonable-suspicion argument irrelevant. *See Rodriguez*, 135 S. Ct. at 1612; *Austin*, 997 N.E.2d at 1034; *Hansbrough*, 49 N.E.3d at 1115. Captain Pyatt testified that when Major Simmons arrived, he had not even begun to write the ticket because the paperwork Tellez-Salinas had provided did not provide adequate information. *See Tr. Vol. II* at 61. "I still [didn't] have the documents. I [didn't] have any documents for this vehicle." *Id*. These difficulties, or "particularized circumstances," understandably lengthened the stop because Captain Pyatt had to exit his squad car, retrieve Tellez-Salinas from the truck, and return Tellez-Salinas to the squad car, where Captain Pyatt's investigation was further slowed by Tellez-Salinas's limited English skills. *See Wilson*, 745 N.E.2d at 793; *see also Tr. Vol. II* at 5, 45, 46, 53, 80, 83. Furthermore, Captain Pyatt took steps that likely made the duration of the stop

shorter than it could have been. To expedite the stop, Captain Pyatt decided not to run the truck's VIN number and instead relied on information provided by Tellez-Salinas, even though that information was incomplete. *Tr. Vol. II* at 59. These factors demonstrate that when Major Simmons conducted the canine sweep within eighteen minutes of the beginning of the traffic stop, Captain Pyatt was still trying to issue a traffic warning, so the canine sweep did not unreasonably extend the duration of the stop beyond the time ordinarily needed to issue a traffic warning. *See Rodriguez*, 135 S. Ct. at 1612; *Austin*, 997 N.E.2d at 1034; *Gibson*, 886 N.E.2d at 642. Because the canine sweep did not unduly extend the duration of the traffic stop, the trial court did not abuse its discretion when it denied the motion to suppress the narcotics discovered in the truck. Therefore, we need not address Tellez-Salinas's claim that the canine sweep was not supported by reasonable suspicion. *See Hansbrough*, 49 N.E.3d at 1115.

[26] Affirmed.

Bailey, J., and Mathias, J., concur.