**OPINION ON REHEARING**



ATTORNEY FOR APPELLANT

Darren Bedwell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jamar Washington,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

August 20, 2015

Court of Appeals Case No.
49A02-1405-CR-306

Appeal from the Marion Superior Court

The Honorable Marc T. Rothenberg, Judge

Cause No. 49G02-1203-FA-17626

**Brown, Judge.**

# Opinion on Rehearing

Jamar Washington appealed his conviction for dealing in cocaine as a class A felony. In a memorandum decision, this court affirmed his conviction. *Washington v. State*, No. 49A02-1405-CR-306 (Ind. Ct. App. December 23, 2014). The conviction was based upon evidence found after Indianapolis Metropolitan Police Officer Luke Schmitt initiated a traffic stop of Washington after observing him speeding and making an illegal lane change. During the traffic stop and prior to the completion of the writing of a ticket for speeding and failure to signal a lane change, a police dog alerted to the presence of narcotics. This court held that the dog sniff and Officer Schmitt's actions were not conducted in a manner that prolonged the stop beyond the time reasonably required to complete the mission of issuing a ticket. *See id.* at 10. Washington has petitioned for rehearing, which we now grant in order to discuss Washington's arguments based upon the United States Supreme Court's recent decision in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015).

Washington argues that Officer Schmitt's inquiry about his prior arrests, attempt to retrieve his criminal history, and question of whether there were drugs in the car resulted in a measurable delay. He asserts that the delay caused by the unrelated questioning of whether there was any cocaine in the car without reasonable suspicion was a violation of the Fourth Amendment. He contends that Officer Schmitt delayed the traffic stop measurably in order to conduct a drug investigation unrelated to the traffic stop and his convictions must be reversed under *Rodriguez*. The State asserts that *Rodriguez* does not call this court's decision into doubt and rather underscores the correctness of this court's analysis.

[3]     In *Rodriguez*, the Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." 135 S. Ct. at 1612. The Court held that "[a] seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834 (2005)). The Court observed that it had "so recognized in *Caballes*" and "adhere[d] to the line drawn in that decision." *Id.*

[4]     The facts in *Rodriguez* reveal that, just after midnight, Police Officer Morgan Struble observed a Mercury Mountaineer veer slowly onto the shoulder of a highway for one or two seconds and then jerk back onto the road. *Id.* Officer Struble pulled the vehicle over at 12:06 a.m. while his dog was in his patrol car. *Id.* Officer Struble spoke with Rodriguez, the driver of the vehicle, and gathered his license, registration and proof of insurance. *Id.* at 1613. After running a records check on Rodriguez, Officer Struble returned to the Mountaineer and asked passenger Scott Pollman for his driver's license and began to question him about where the two men were coming from and where they were going. *Id.* Pollman replied that they had traveled to Omaha, Nebraska, to look at a Ford Mustang that was for sale and that they were returning to Norfolk, Nebraska. *Id.* Officer Struble returned again to his patrol car, where he completed a records check on Pollman, called for a second officer, and began writing a warning ticket for Rodriguez for driving on the shoulder of the road. *Id.*

Officer Struble returned to Rodriguez's vehicle to issue the written warning. *Id.* By 12:27 or 12:28 a.m., Officer Struble had finished explaining the warning to Rodriguez and had given the documents obtained from Rodriguez and Pollman back to them. *Id.* Officer Struble later testified that at that point all the reasons for the stop were "out of the way." *Id.* Officer Struble then asked for permission to walk his dog around Rodriguez's vehicle, and Rodriguez said no. *Id.* Officer Struble then instructed Rodriguez to turn off the ignition, exit the vehicle, and stand in front of the patrol car to wait for the second officer. *Id.* Rodriguez complied. *Id.* At 12:33 a.m., a deputy sheriff arrived, and Officer Struble then led his dog twice around the Mountaineer. *Id.* The dog alerted to the presence of drugs. *Id.* Seven or eight minutes had elapsed from the time Officer Struble issued the written warning until the dog indicated the presence of drugs. *Id.* A search of the vehicle revealed a large bag of methamphetamine. *Id.*

On appeal, the Court addressed the question of whether police routinely may extend an otherwise completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Id.* at 1614. The Court held that because addressing the infraction is the purpose of the stop, "it may 'last no longer than is necessary to effectuate th[at] purpose.'" *Id.* (citing *Caballes*, 543 U.S. at 407, 125 S. Ct. 834). The Court held that "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* The Court observed that its decisions in *Caballes* and *Arizona v. Johnson*, 555 U.S. 323, 129 S. Ct. 781 (2009), heed these constraints. *Id.* at 1614. The Court stated:

> In [*Caballes* and *Arizona*], we concluded that the Fourth Amendment tolerated certain unrelated investigations that did not lengthen the roadside detention. *Johnson*, 555 U.S., at 327-328, 129 S. Ct. 781 (questioning); *Caballes*, 543 U.S., at 406, 408, 125 S. Ct. 834 (dog sniff). In *Caballes*, however, we cautioned that a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a warning ticket. 543 U.S., at 407, 125 S. Ct. 834. And we repeated that admonition in *Johnson*: The seizure remains lawful only "so long as [unrelated] inquiries do not measurably extend the duration of the stop." 555 U.S., at 333, 129 S. Ct. 781. *See also Muehler v. Mena*, 544 U.S. 93, 101, 125 S. Ct. 1465, 161 L.Ed.2d 299 (2005) (because unrelated inquiries did not "exten[d] the time [petitioner] was detained[,] . . . no additional Fourth Amendment justification . . . was required"). An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.

*Id.* at 1614-1615. The Court held that beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop which typically include checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Id.* The Court held that the critical question is whether conducting the sniff prolongs or adds time to the stop. *Id.* at 1616. The Court remanded the case for further proceedings to determine whether reasonable suspicion of criminal activity justified detaining Rodriguez beyond completion of the traffic infraction investigation. *Id.* at 1616-1617.

[7] In our initial memorandum decision, this court observed that the Court in *Caballes* noted that a "seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably

required to complete that mission." Slip op. at 8 (quoting *Caballes*, 543 U.S. at 407, 125 S. Ct. at 837). We also stated that "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as the inquiries do not measurably extend the stop's duration." *Id.* at 8-9 (quoting *Johnson*, 555 U.S. at 325, 129 S. Ct. at 783). We stated that "the question is whether the dog sniff was conducted in a manner that prolonged the stop beyond the time reasonably required to complete the mission of issuing a ticket." *Id.* at 9. We held:

> The record reveals that the video recording began thirty to forty seconds after the vehicles stopped and the recording shows a time stamp of 4:17:44. Officer Schmitt asked Washington a few questions and returned to his vehicle less than three minutes after the start of the video. His computer was in a dead spot and after four or five minutes of not receiving a response, he contacted control. At 4:25:30, dispatch informed Officer Schmitt that Washington had a valid driver's license. Officer Wildauer deployed his dog at 4:27:33, less than ten minutes after the beginning of the video and less than eleven minutes after the vehicles stopped. At this point, Officer Schmitt had not finished completing the electronic ticket. At approximately 4:28:02, Officer Wildauer's dog indicated the presence of the odor of narcotics. While Officer Schmitt typically hands the traffic ticket to the violator, he had to give the ticket to Detective Ingram because Washington was arrested for the other offenses. Under the circumstances, we cannot say that the dog sniff or Officer Schmitt's actions were conducted in a manner that prolonged the stop beyond the time reasonably required to complete the mission of issuing a ticket.

*Id.* at 9-10. We cannot say that our previous memorandum decision conflicts with the holding in *Rodriguez*. Accordingly, we reaffirm our previous decision.

Bailey, J., and Robb, J., concur.