

FILED

Jan 29 2016, 8:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Lawrence M. Hansen
Hansen Law Firm, LLC
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jason Hansbrough,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 29, 2016

Court of Appeals Case No.
29A04-1508-CR-1121

Appeal from the Hamilton Circuit Court

The Honorable Paul A. Felix, Judge

Trial Court Cause No.
29C01-1410-F4-8157

**Crone, Judge.**

# Case Summary

Jason Hansbrough appeals his conviction, following a bench trial, for unlawful possession of a firearm by a serious violent felon, a level 4 felony. During a valid traffic stop of Hansbrough's vehicle, police officers conducted a dog sniff around the vehicle. After the canine alerted to the presence of narcotics, officers searched the vehicle and found a firearm. Hansbrough unsuccessfully moved to suppress the evidence obtained during the search arguing that the dog sniff prolonged the traffic stop in violation of his constitutional rights. The evidence was subsequently admitted at trial over his continuing objection. The sole restated issue for our review is whether the trial court abused its discretion in admitting the evidence obtained as a result of the search. Finding no abuse of discretion, we affirm.

# Facts and Procedural History

On September 30, 2014, Fishers Police Officer Kevin Silbaugh was driving north on Interstate 69 when he observed a black SUV following less than one second of braking distance behind another vehicle.[1] Officer Silbaugh activated his emergency lights and conducted a traffic stop of the black SUV. Hansbrough was driving the black SUV and was the vehicle's sole occupant.

---

[1] Indiana Code Section 9-21-8-14 provides that "[a] person who drives a motor vehicle may not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of both vehicles, the time intervals between vehicles, and the condition of the highway." A violation of this section constitutes a class C infraction. *See* Ind. Code § 9-21-8-49.

[3] Officer Silbaugh approached the passenger side of the vehicle and asked Hansbrough for his license, registration, and insurance information. Officer Silbaugh also asked Hansbrough where he had come from and where he was headed. Hansbrough informed Officer Silbaugh that he was traveling from Indianapolis to Muncie.

[4] While he was speaking to Hansbrough, Officer Silbaugh observed what he believed to be marijuana "shake" in the area between the cup holder and the center console inside the vehicle. Tr. at 12.[2] Based upon this observation, Officer Silbaugh suspected the presence of drugs in the SUV. Accordingly, as he walked back to his police vehicle with Hansbrough's documents, Officer Silbaugh immediately called for a canine unit to come to the scene. Officer Silbaugh then sat in his police vehicle and began typing out a warning ticket and running a records check of Hansbrough. Officer Silbaugh returned once to Hansbrough's vehicle to verify that he still lived at the address listed on his identification. Officer Silbaugh again returned to his police vehicle, and at that time a backup officer arrived at the scene as a matter of routine practice. Within fourteen minutes of the commencement of the traffic stop, the canine unit arrived at the scene. Officer Silbaugh was on the phone checking for

---

[2] At trial, Officer Silbaugh explained that the term "shake" is used to refer to remnants of marijuana because "it's a small amount." Tr. at 12. He described it as "similar to if someone ate a bag of chips and dropped some crumbs on the floor." *Id*.

outstanding warrants on Hansbrough and had not yet completed his paperwork for the traffic stop when the canine unit arrived.

[5] Sixteen minutes after the traffic stop began, Officer Gerald Fenimore of the Noblesville Police Department conducted a dog sniff around Hansbrough's vehicle by walking his narcotics-trained canine around the perimeter of the vehicle. The canine alerted to the presence of narcotics by sitting down outside the open window on the driver's side. Officer Silbaugh was still on the phone checking for outstanding warrants on Hansbrough, and when he learned that the canine had alerted to the presence of narcotics he "asked to call them back." *Id*. at 15. Due to the canine alert, Officers Silbaugh and Fenimore proceeded to search Hansbrough's vehicle. Officer Fenimore noticed what he also believed to be "marijuana shake" in the front passenger area of the vehicle, but he did not try to collect it. *Id*. at 57. The search revealed a handgun underneath the driver's seat.

[6] Officers handcuffed Hansbrough and placed him in one of the police vehicles. After being advised of his *Miranda* rights, Hansbrough admitted that the handgun was his and that he kept it for protection. Hansbrough also acknowledged that he had a prior conviction for class C felony battery resulting in bodily injury.

[7] The State charged Hansbrough with unlawful possession of a firearm by a serious violent felon, a level 4 felony. Thereafter, Hansbrough filed a motion to suppress evidence obtained as a result of the vehicle search claiming that the

dog sniff impermissibly prolonged the traffic stop and therefore violated his constitutional rights. Following a hearing, the trial court denied the motion. A bench trial was held on May 28, 2015. During trial, Hansbrough objected to the admission of any evidence obtained as a result of the search of his vehicle. The trial court overruled the objection and admitted the evidence. At the conclusion of the trial, the court found Hansbrough guilty as charged. This appeal ensued.

## Discussion and Decision

Although Hansbrough challenges the trial court's denial of his motion to suppress evidence obtained during the search of his vehicle, that issue is no longer viable. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). Because he appeals following a completed trial, the issue before us is properly framed as whether the trial court abused its discretion in admitting the evidence at trial. *Id*. A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Palilonis v. State*, 970 N.E.2d 713, 726 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id*.

When reviewing a trial court's ruling on the admissibility of evidence obtained from an allegedly illegal search, we do not reweigh the evidence but defer to the trial court's factual determinations unless clearly erroneous. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). We view conflicting evidence most favorable

to the ruling, and we consider "afresh any legal question of the constitutionality of a search and seizure." *Id*.

[10] In this case, Hansbrough does not dispute the validity of the initial traffic stop. Instead, he asserts that the stop became unlawful because the dog sniff prolonged the duration of the stop beyond the time reasonably required to complete the original purpose of the stop, and that Officer Silbaugh lacked reasonable suspicion that he was engaged in criminal activity to otherwise extend the stop. Therefore, he argues, the subsequent search of the vehicle was invalid and the evidence obtained was inadmissible. We must disagree.

[11] The Fourth Amendment protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. *Krise v.* State, 746 N.E.2d 957, 961 (Ind. 2001).[3] Our supreme court has recognized that a reasonable narcotics dog sweep is not a search for purposes of the Fourth Amendment. *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2015) (citations omitted). "However, such a sweep is an unreasonable investigatory detention if the motorist is held for longer than necessary to complete the officer's work related to the traffic violation and the officer lacks reasonable suspicion that the motorist is engaged in criminal activity." *Id*.

---

[3] Although Hansbrough cites to both the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution in his appellant's brief, he provides no independent argument or analysis of his claim pursuant to the Indiana Constitution. Therefore, neither do we. *See Jackson v. State*, 996 N.E.2d 378, 385 (Ind. Ct. App. 2013) (failure to provide independent analysis of Article 1, Section 11 results in waiver of the issue on appeal), *trans. denied* (2014).

[12] We need not engage in a reasonable suspicion analysis here because the record reveals that the dog sniff of Hansbrough's vehicle did not prolong the duration of the valid traffic stop. In *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015), the United States Supreme Court recently held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." Specifically, the *Rodriguez* court held that "[a] seizure justified by only a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id*. (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). The court explained that, beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. at 1615. The court determined that the police may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Id*. The critical question is whether "conducting the sniff 'prolongs'—i.e., adds time to—'the stop[.]'" *Id*. at 1616; *see Washington v. State*, 42 N.E.3d 521 (Ind. Ct. App. 2015) (rehearing opinion reaffirming conviction pursuant to

*Rodriguez* and concluding that dog sniff did not prolong traffic stop), *opinion on reh'g, trans. denied*.[4]

[13]    The facts and inferences from the record indicate that the dog sniff of Hansbrough's vehicle was conducted while his valid traffic stop was ongoing, or in other words, before the traffic stop was completed. The police dash cam evidence establishes that the dog sniff occurred within sixteen minutes of the start of the traffic stop. Officer Silbaugh testified that he had not yet completed his paperwork and was still on the phone checking for outstanding warrants on Hansbrough when the canine unit arrived and conducted the sweep. Under the circumstances, we cannot say that the dog sniff prolonged or added any time to the valid traffic stop. Therefore, the subsequent search of Hansbrough's vehicle was not rendered invalid, and the trial court did not abuse its discretion in admitting the evidence obtained during that search.[5] *See Myers v. State*, 839 N.E.2d 1146, 1150 (Ind. 2005) (finding no error in trial court's determination that dog sniff occurred while traffic stop was ongoing because officer was

---

[4] For a detailed summary of previous "Indiana dog sniff cases" that we believe remain consistent with *Rodriguez,* see *State v. Gray*, 997 N.E.2d 1147, 1151 (Ind. Ct. App. 2013) (citing *Bush v. State*, 925 N.E.2d 787 (Ind. Ct. App. 2010), *clarified on reh'g*, 929 N.E.2d 897), *trans. denied* (2014)).

[5] While we need not reach the issue, we conclude that even if the dog sniff prolonged Hansbrough's traffic stop, the evidence establishes that Officer Silbaugh had reasonable suspicion of criminal activity (based upon his observation of what he believed to be marijuana shake) in order to detain Hansbrough beyond the time necessary to complete the mission of the stop. *See Gray*, 997 N.E.2d at 1152 (recognizing that once a justifiable stop is made, the scope of the officer's investigation may be broadened beyond the purpose for which the person was stopped only if additional particularized and objective suspicions come to light; although additional suspicion is not required to perform a dog sniff, suspicion is required for any additional seizure that the dog sniff caused).

explaining traffic citation to defendant while canine was performing sniff and only thirteen minutes had elapsed from start of traffic stop).

[14] Hansbrough urges that Officer Silbaugh knew "how long the canine officer [would] take to get there," and therefore his testimony that he was not finished with his ordinary traffic stop inquiries when the canine unit arrived and conducted the sniff was "suspect." Appellant's Br. at 5, 9. He argues that accepting an officer's testimony in this regard "creates a real danger of officers slowing down their processes to allow time for the canine to arrive." *Id* at 9. We acknowledge the legitimacy of his concerns. Nevertheless, the *Rodriguez* court observed that the reasonableness of a seizure depends "on what the police in fact do" and reasonable diligence on the part of police can only be gauged "by noting what the officer actually did and how he did it [.]" *Rodriguez*, 135 S. Ct. at 1616. We remind Hansbrough that it was the trial court's prerogative to accept or reject Officer Silbaugh's testimony, and we do not reweigh the evidence but defer to the trial court's factual determinations unless clearly erroneous. *Meredith*, 906 N.E.2d at 869. There is nothing in the record to suggest that the trial court's determinations here were clearly erroneous. We affirm Hansbrough's conviction.

[15] Affirmed.

Vaidik, C.J., and Bailey, J., concur.