

**FILED**

Dec 27 2019, 8:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shane E. O'Keefe,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 27, 2019

Court of Appeals Case No.
19A-CR-1733

Appeal from the Vanderburgh
Circuit Court

The Honorable David D. Kiely,
Judge

Trial Court Cause No.
82C01-1807-F4-4879

**Crone, Judge.**

## Case Summary

[1] Shane E. O'Keefe appeals his convictions, following a bench trial, for level 4 felony possession of methamphetamine and class C misdemeanor possession of paraphernalia.[1] He asserts that the trial court abused its discretion in admitting evidence obtained as a result of the patdown search of his person during a valid traffic stop. He claims that the search violated his rights under the Fourth Amendment to the United States Constitution.[2] Finding no constitutional violation, and therefore no abuse of discretion, we affirm.

## Facts and Procedural History

[2] On July 16, 2018, Lieutenant Brent Hoover of the Evansville Police Department was traveling eastbound on Diamond Avenue in a fully marked patrol vehicle. He observed a black Harley Davidson motorcycle with two occupants traveling with no visible license plate. Lieutenant Hoover activated his emergency lights and sirens and initiated a traffic stop of the motorcycle. At the time of the stop, Lieutenant Hoover was off duty and was not wearing his police uniform.

---

[1] The trial court also entered judgment against O'Keefe for two traffic infractions.

[2] O'Keefe also asserts that the search violated his rights under Article 1, Section 11 of the Indiana Constitution, but he presents no separate argument with respect to the Indiana Constitution, instead conceding that Indiana has adopted the same rationale as applied in Fourth Amendment cases in deciding the reasonableness of an investigatory stop and subsequent patdown search. *Holbert v. State*, 996 N.E.2d 396, 400 (Ind. Ct. App. 2013), *trans. denied*. Thus, we will likewise not address the federal and state constitutional provisions separately.

[3]     The motorcycle was being operated by O'Keefe, and a female passenger, Megan Schmitt, was with him. When Lieutenant Hoover approached O'Keefe and Schmitt, he observed that Schmitt was extremely nervous. Lieutenant Hoover also observed a large knife bag attached to the motorcycle and observed that the motorcycle appeared to be freshly painted. Lieutenant Hoover took custody of the knife attached to the motorcycle and asked O'Keefe if he had any other weapons.[3] O'Keefe stated that he did not.

[4]     Upon Lieutenant Hoover's request, O'Keefe and Schmitt provided identification. O'Keefe produced an Indiana driver's license with no motorcycle endorsement. Schmitt produced an Indiana identification card. O'Keefe was unable to produce proof of insurance. After receiving the identification, Lieutenant Hoover returned to his patrol vehicle, ran the information, and verified that Schmitt had an active misdemeanor arrest warrant. While Lieutenant Hoover was still in his patrol vehicle, he observed Schmitt on her cell phone, and then saw her start "walking away." Tr. Vol. 2 at 9. When Lieutenant Hoover then exited the patrol car, Schmitt "actually ran." *Id*. For the purposes of civilian and officer safety, Lieutenant Hoover placed handcuffs on O'Keefe and informed him that he was being detained and not arrested. Lieutenant Hoover "didn't know what was taking place, why [Schmitt had fled] … hadn't been able to determine ownership of the motorcycle or any of those

---

[3] Lieutenant Hoover stated that the pouch on the motorcycle had what he refers to as "a shove knife" in it. Tr. Vol. 2 at 9.

things at that point." *Id*. at 10. Because Lieutenant Hoover observed that O'Keefe was wearing a motorcycle vest with several large bulges, he did a brief patdown search of O'Keefe for weapons. He located a sharpening stone for a knife in one of O'Keefe's vest pockets and removed it.

[5] Evansville Police Department Detective Nathan Hassler just happened to be driving by the scene when he observed Lieutenant Hoover on the side of the road, not in uniform, with a "subject detained." *Id*. at 19. Detective Hassler stopped to see if Lieutenant Hoover needed assistance.[4] Lieutenant Hoover advised Detective Hassler that another "subject had fled from the stop," and he asked Detective Hassler to "take custody of Mr. O'Keefe at that time while he went to search for the subject that had fled." *Id.* Lieutenant Hoover then left to pursue Schmitt.

[6] Detective Hassler, who was now alone with O'Keefe, immediately noticed that O'Keefe "had a lot of bulky items in his motorcycle vest." *Id*. In addition to the fact that O'Keefe's passenger had just fled the scene, Detective Hassler found it concerning that O'Keefe "had a large number of garments on for that time of year, temperature wise," not to mention that it appeared that his outer vest "pockets were packed full of stuff," which alerted Detective Hassler to an "obvious safety issue in terms of what could be [accessed] by O'Keefe." *Id*. at

---

[4] The record indicates that although Lieutenant Hoover had radioed for assistance, Detective Hassler had his radio tuned to an encrypted channel, so he did not hear Lieutenant Hoover's requests for assistance and simply stopped at the scene based upon his observation.

20. Unaware of whether Lieutenant Hoover had already conducted a patdown search, Detective Hassler conducted a patdown search to make "sure that Mr. O'Keefe was safe for [Detective Hassler] to be around, and that included a pat down of his person due to the bulges in his pockets." *Id*. at 19-20.

During the patdown, Detective Hassler immediately felt what he recognized to be a large knife in O'Keefe's pocket. Because his pockets were "so packed full of items[,]" in order to get to the knife, Detective Hassler had to first remove a cloth "sheath" from O'Keefe's pocket. *Id*. at 20. Due to the "flimsy material" of the sheath, and without needing to "manipulate the [sheath] in any way," it was immediately apparent to Detective Hassler upon grabbing it that it contained a pipe commonly used to consume methamphetamine. *Id*. Detective Hassler removed the pipe from the sheath and observed burnt residue inside the pipe. At that point, Detective Hassler placed O'Keefe under arrest, read him his *Miranda* rights, and asked him if he had any other items on his person. O'Keefe stated that he had "dope," specifically "an 8 ball" of methamphetamine.[5] *Id*. at 21. While conducting his search incident to arrest, Detective Hassler discovered three individually wrapped baggies containing a total of 9.5 grams of methamphetamine on O'Keefe's person. O'Keefe then revealed to Detective Hassler that he had struggled with addiction his entire life.

---

[5] Detective Hassler testified that an "8 ball" is approximately 3.5 grams of methamphetamine. Tr. Vol. 2 at 21.

[8] On July 18, 2018, the State charged O'Keefe with level 4 felony possession of methamphetamine and class C misdemeanor possession of paraphernalia. The State also charged O'Keefe with two class C traffic infractions; improper motorcycle license endorsement and operating a motorcycle without registration and display of registration. On February 20, 2019, O'Keefe filed a motion to suppress evidence obtained during the traffic stop. Among other things, O'Keefe argued that Detective Hassler's patdown search violated his constitutional rights. Following a hearing, the trial court denied O'Keefe's motion to suppress.

[9] A bench trial was held on May 31, 2019. During trial, O'Keefe lodged a continuing objection based upon his motion to suppress and accompanying memoranda. At the conclusion of trial, the court found O'Keefe guilty as charged. The court sentenced O'Keefe to concurrent sentences of seven years for the level 4 felony and ninety days for the class C misdemeanor. This appeal ensued.

## Discussion and Decision

[10] We begin by noting that O'Keefe does not challenge the validity of his initial traffic stop, nor could he, as "[i]t is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle." *Tinker v. State*, 129 N.E.3d 251, 255 (Ind. Ct. App. 2019) (quoting *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013)), *trans. denied*. Rather, he challenges only the patdown search of his person by Detective Hassler, asserting that the search was conducted without reasonable suspicion

that he was armed and dangerous, and therefore the trial court abused its discretion in admitting any evidence obtained thereafter.[6]

[11] The trial court has broad discretion to rule on the admissibility of evidence. *Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017). Generally, evidentiary rulings are reviewed for an abuse of discretion and reversed when admission is clearly against the logic and effect of the facts and circumstances. *Id*. Conflicting evidence is viewed in the light most favorable to the trial court's ruling. *Hansbrough v. State*, 49 N.E.3d 1112, 1114 (Ind. Ct. App. 2016), *trans. denied*. However, we consider "afresh any legal question of the constitutionality of a search and seizure." *Id.* (citing *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2000)).

[12] The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by prohibiting them without a warrant supported by probable cause. U.S. CONST. amend. IV. To deter state actors from violating that prohibition, evidence obtained in violation of the Fourth Amendment generally is not admissible in a prosecution of the citizen whose right was violated. *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013); *see Hill v. State*, 956 N.E.2d 174, 177 (Ind. Ct. App. 2011) (holding that evidence

---

[6] We note that O'Keefe assumes "for the sake of argument that Lieutenant Hoover had reasonable suspicion that O'Keefe was armed and dangerous," and he develops no argument regarding the reasonableness of Lieutenant Hoover's patdown search. Appellant's Br. at 12. Accordingly, we decline to address the propriety of that search, as any such challenge would be waived for failure to make cogent argument as required by Indiana Appellate Rule 46(A)(8).

obtained from an illegal search is "fruit of the poisonous tree" and therefore inadmissible in a court of law); *Segura v. United States*, 468 U.S. 796, 804 (1984) (noting that exclusionary rule encompasses both "primary evidence obtained as a direct result of an illegal search or seizure" and any "evidence later discovered and found to be derivative of an illegality."). The State has the burden of demonstrating the admissibility of evidence collected during a seizure or search. *Clark*, 994 N.E.2d at 260.

[13] An officer may perform a patdown of a driver or passenger of a stopped vehicle when the officer has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether there is probable cause to arrest the individual for a crime. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The purpose of a *Terry* protective search "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993). "[T]here must exist articulable facts to support an officer's reasonable belief that the particular individual is armed and dangerous." *Patterson v. State*, 958 N.E.2d 478, 486 (Ind. Ct. App. 2011). The officer "need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Berry v. State*, 121 N.E.3d 633, 637 (Ind. Ct. App. 2019), *trans. denied*. To determine whether an officer acted reasonably, we consider the specific, reasonable inferences that the officer is entitled to draw from the facts in light of his experience. *Patterson*, 958 N.E.2d at 486.

[14] Here, Detective Hassler arrived at what had become a chaotic scene of a traffic stop. Lieutenant Hoover informed him that the female passenger had just fled on foot, and he asked Detective Hassler to secure O'Keefe while he pursued the female. Detective Hassler quickly observed that O'Keefe was wearing significantly more clothing than the weather called for, which included a thin outer leather vest with bulging pockets. Based upon these facts, Detective Hassler had "a significant safety concern" regarding O'Keefe and was fearful that something more than a routine traffic stop was occurring. Tr. Vol. 2 at 32. He stated that he believed that one of the obvious large bulges in O'Keefe's vest could be a weapon, so he conducted a patdown search for officer safety.[7] Detective Hassler indicated that he was not aware of whether Lieutenant Hoover had already conducted a patdown search for weapons, and Detective Hassler, who was now alone at the scene, felt that he needed to ensure that O'Keefe was "safe … to be around … due to the bulges in his pockets." *Id.* at 19-20.[8]

---

[7] Although neither party belabors this point, we note that O'Keefe's hands were cuffed behind his back at the time of Detective Hassler's patdown search. Detective Hassler acknowledged this fact but stated that in his training and experience he believed that O'Keefe, who he believed might be concealing a weapon, was "still a danger to police officers." Hearing Tr. Vol. 2 at 40. Detective Hassler vividly described that the vest was loose and "not attached in the front" so "the side of the [vest] was able to freely move back and forth." *Id.* He further stated that he had "seen video of offenders shooting officers with guns after they've already been handcuffed behind their back." *Id.*

[8] O'Keefe states that Detective Hassler "observed Lieutenant Hoover perform a patdown search of O'Keefe." Appellant's Br. at 12. The record does not support this statement. To the extent that there is conflicting evidence on this point, we remind O'Keefe that we observe conflicting evidence in the light most favorable to the trial court's evidentiary ruling. *Hansbrough*, 49 N.E.3d at 1114.

[15] Based upon the admittedly thin record before us, we think that a reasonably prudent man in Detective Hassler's position would be warranted in the belief that his safety or that of others was in danger, justifying his patdown search of O'Keefe. Specifically, the chaotic scene that Detective Hassler happened upon, coupled with his observations of large bulges in O'Keefe's vest that he believed could be weapons, formed an objectively reasonable basis for a patdown search. Accordingly, we conclude that Detective Hassler's patdown search did not run afoul of the Fourth Amendment, and therefore the trial court did not abuse its discretion in admitting evidence obtained as a result, including evidence obtained directly as well as derivatively from the search. We affirm O'Keefe's convictions.

[16] Affirmed.

May, J., and Pyle, J., concur.